**TIGERTAIL QUARRIES, Inc., v. UNITED STATES.**

**No. 10970.**

Circuit Court of Appeals, Fifth Circuit.

June 20, 1944.

Robert C. Lane, of Miami, Fla., for appellant.

Norman M. Littell, Asst. Atty. Gen., and Vernon L. Wilkinson and Wilma C. Martin, Attys., Department of Justice, both of Washington, D. C., and Herbert S. Phillips, U. S. Atty., of Tampa, Fla., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

The United States instituted condemnation proceedings to take thirty-one parcels

of land to be used as a Naval Training Base at Ft. Lauderdale, Florida. Tigertail Quarries, Inc. owned approximately 42 acres of these lands. The case was tried to a jury which found and assessed the value of the Tigertail properties to be $12,158. From the judgment entered on this verdict Tigertail Quarries, Inc., appealed.

On May 28, 1942, the United States condemned 960 acres of land for the establishment of a Naval Training Base at Ft. Lauderdale. Under the Second War Powers Act of March 27, 1942, 50 U.S.C.A. Appendix, § 632, the proceedings here were commenced on September 14, 1942, by the filing of a petition to condemn an additional 221.3 acres of land for use in connection with the Naval Training Base at Ft. Lauderdale. Immediate possession was granted to the United States on the same day. On October 6, 1942, a declaration of taking was filed and $30,407 deposited in court as estimated compensation for the entire area. Of the total thirty-one parcels thus taken, Tigertail Quarries owned parcels 12, 16 and 24, consisting of between 41.78 and 42.29 acres. Of the total sum deposited with the declaration of taking $3,500 was allocated to the Tigertail tracts.

In the year 1942, Tigertail Quarries purchased the lands here in question, which it had been holding under an option. The purchase price was $7,500. The lands were being used for rock quarries. Before the land in question was condemned the evidence shows that Tigertail Quarries had removed approximately half the rock from the Tigertail properties here under consideration.

The evidence is virtually without dispute that in May 1942 and prior to the first condemnation proceeding, the Government engineers had prepared a map in accordance with plans for the building of the runway for the base in question, and at that time the Tigertail properties were included in the proposed condemnation. This map showed the Tigertail tract as "property to be acquired" for the "U. S. Naval Operational Training Base, Ft. Lauderdale, Florida." This property was appraised by the Navy Department early in June of 1942.

Much evidence was introduced which under the liberal ruling of the court covered a wide range. Moreover, the jury was permitted to go upon and view the property. Thereafter, they returned a verdict for Tigertail Quarries for the sum of $12,158 for parcels 12, 16, and 24.

Tigertail Quarries contend that it was entitled to recover any enhancement in the value of the property taken and which occurred between May 28 and September 14, due to the taking of the original 960 acres. The trial court ruled that enhancement due to the establishment of the Naval Air Base could not be included, for the reason that it was so closely connected in point of time, and on the further ground that any enhancement which may have occurred due to proximity to the base arose out of the demands created by the Government's need for rock in connection with the project.

■ If a distinct tract of land is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. "If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement." United States v. Miller, 317 U.S. 369, 376, 377, 63 S.Ct. 276, 281, 87 L.Ed. 336, 147 A.L.R. 55; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236.

■ It was proper to instruct the jury that Tigertail Quarries were entitled to no increase in value arising after May 28, 1942. Shoemaker v. United States, 147 U. S. 282, 13 S.Ct. 361, 37 L.Ed. 170.

■ The trial court very correctly instructed the jury that:

"In determining the market value of land everything which gives it intrinsic value is a proper element of consideration, not only its present use, but its capabilities are to be considered. You should take into consideration all the purposes for which that property is adapted and is used or may be used, so far as such adaptability and uses are shown by the evidence and by your view of the property, so far as same may have affected the market value of the prop-

erty on September 14, 1942. The owner is entitled to have a special value of the property, if any, due to its adaptability for a particular business or purpose, taken into consideration as an element of the amount to be awarded him."

█ There was abundant evidence to support the finding of the jury. We find no reversible error in the record and the judgment is affirmed.