SCOTT et ux. v. UNITED STATES.

No. 10907.

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1944.

W. Edward Lee, of Tyler, Tex., for appellants.

Lawrence Vold and Vernon L. Wilkinson, Attys., Department of Justice, both of Washington, D. C., Norman M. Littell, Asst. Atty. Gen., and Clyde O. Eastus, U. S. Atty., of Fort Worth, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

132

SIBLEY, Circuit Judge.

The appeal is from a judgment on a jury verdict fixing just compensation for 173.7 acres of land taken on Aug. 24, 1942, to enlarge Camp Bowie which lay 2¼ miles south of Brownwood, Texas. The errors specified are in respect to rulings on evidence and charges of the court which it is now contended wrongly excluded as an element of value that due to the proximity of the Camp before its enlargement.

The land was farm or ranch land across a paved highway leading to Brownwood when the Camp was first established in November, 1940. Appellants bought it in January, 1941, to subdivide into lots for buildings to be rented or sold to officers and employees at the Camp. By February, 1942, they had platted it and recorded a deed of dedication, had improved a few streets, obtained permission from the Commandant of the Camp to connect with the gas and water supply of the Camp, and from the City to connect with its sewer which passed nearby, and trenches had been dug but no pipes laid. They had sold a lot to a church, and the church building had been erected; and they had built a residence for themselves, and laid the foundations for ten other houses. On March 13, 1942, an officer warned them to cease developments and stated the land would probably be taken for the Camp. On Aug. 24, 1942, as stated, a condemnation proceeding was instituted to take the fee in the land on which the Camp was, theretofore held only on lease, and to take fifty or sixty thousand acres more, including the land of appellants. No person testifies as to when or how or in what way the enlargement was determined on, except as the petition for condemnation may disclose it. It states that the Secretary of War had determined that the lands are "necessary to be acquired for use in the expansion of Camp Bowie" and that the Congress by its act of July 2, 1942, had appropriated funds therefor. There is also no evidence as to the original plans for Camp Bowie in 1940, except that the leases were gotten by the Chamber of Commerce of Brownwood for the Government, and several official maps show its confines across the highway from appellants' land. The jury's verdict seems based on a compromise between the values placed on the land as mere farm land by the witnesses for both sides.

The applicable rule of law is thus stated in United States v. Miller, 317 U.S. 369, 376, 377, 63 S.Ct. 276, 281, 87 L.Ed. 336: "If a distinct tract is condemned,[1] in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvements erected on the land taken. Should the Government *at a later date,* determine to take these other lands it must pay their market value as *enhanced by this factor of proximity.* If, however, the public project *from the beginning* included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands * * * any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.[2] The question then is whether the respondents' lands were probably *within the scope of the project from the time the Government was committed to it.* If they were not, but were merely adjacent lands, the *subsequent enlargement of the project* to include them ought not to deprive the respondents of the value added *in the meantime* by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value *arising from the known fact that the lands probably would be condemned."* (Emphasis added.)

On the meager evidence in this record as to the original scope of the Camp Bowie project we incline to think the enlargement was not then in contemplation. The Selective Service Act was passed September 16, 1940, 54 Stat. 885, 50 U.S.C.A. Appendix § 301 et seq., and this no doubt was the occasion for establishing the Camp to help give training to the selectees. But the United States was not then at war, nor thought likely to be. The land acquired in November, 1940, was 80,000 acres, held by lease. It was apparently fenced in, for the evidence is that three entrances were opposite the land which appellants bought the January following. On December 7, 1941, more than ten months after they bought, occurred the attack by Japan on Pearl Har-

---

[1] Or otherwise acquired by the Government, as here.

[2] We so held recently in Tigertail Quarries v. United States, 5 Cir., 143 F. 2d 110.

bor, and a few days later war against Japan and Germany was declared. An all out effort to raise and train a great army was now begun. The activity at Camp Bowie no doubt at once increased, but we have no evidence that the enlargement of it was contemplated by anyone till March, 1942, and none that the Goverment had committed itself thereto until money was appropriated for such purposes and in July the Secretary of War determined that more land was needed here. It was at least a fact question for the jury as to when the land now in controversy became likely to be condemned. It was also a jury question, if its inclusion was not contemplated in 1940, what if any subdivisional value it had acquired by the proximity to old Camp Bowie before the enlargement was undertaken.

In the charge to the jury the court said: "Now you ask me what is to determine the value of this land, and I say to you, gentlemen, that you cannot give the plaintiff here the benefit of such increased value, if any there was, by reason of the establishment of Camp Bowie. His value must be taken without the Camp and upon the highest and best use of the land at the time of its taking." Appellants excepted to this charge, and requested the court to charge that they fix the value as of August 24, 1942, irrespective of what gave it value as of that date. The charge given was error, because the evidence was such that the jury could have found that the land in controversy was not within the contemplation of the first establishment of Camp Bowie, and that a proximity value had accrued before the enlargement, as a new project, was undertaken. The requested charge was, however, properly refused, because part of the proximity value as of August 24, 1942, might be found due to the enlargement of the Camp then in progress, and would not be allowable.

It is true that the witnesses gave their opinions of values as of August 24, 1942, and not specially as of March 13, 1942, or other date at which enlargement was first definitely mentioned, but the circumstances were all before the jury, and they were not bound by the opinions of witnesses and could form their own opinions as of any date they found to be decisive.

We do not review the rulings on evidence which were not consistent with the view above expressed. Neither counsel during the trial seemed to have in mind the dis-

tinctions laid down in the Miller case, supra. With those distinctions in view, and perhaps with clearer evidence as to the original plan for Camp Bowie, and as to how and when the enlargement came about, the rulings on another trial will doubtless be corrected where wrong.

The judgment is reversed and the verdict set aside, and the cause remanded for further proceedings not inconsistent herewith.

Reversed and remanded.