EL PUEBLO DE PUERTO RICO, representado por el HON. LUIS MUÑOZ MARÍN, GOBERNADOR DE PUERTO RICO, demandante y apelado, *v.* SUCESIÓN DE ROBERT L. JUNGHANNS ETC., demandados y apelantes.

Núm. 10575.—*Sometido:* Junio 12, 1952. *Resuelto:* Agosto 4, 1952.

*Félix Ochoteco, Jr.* y *H. Ramos Mimoso,* abogados de la Sucesión Junghanns, apelante; *Hon. Procurador General Víctor Gutiérrez Franqui, Clemente Pérez Martínez* y *Jesús Zequeira, Procuradores Generales Auxiliares,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

La Autoridad de las Fuentes Fluviales de Puerto Rico inició demanda interesando la expropiación de 2.557 cuerdas de terreno(¹) que formaban parte de una finca de mayor cabida situada en el barrio Pájaros del término municipal de Bayamón, con el propósito de construir allí un garaje, un almacén y una subestación transformadora de energía eléctrica. Luego de una vista en los méritos el Tribunal de Expropiaciones dictó sentencia declarando que la justa compensación a ser pagada por la parcela objeto de la demanda lo era la suma de $7,642.06. En la opinión emitida en apoyo de su sentencia hizo constar lo siguiente:

"En 20 de junio de 1947, el Gobierno de Puerto Rico, representado por su Comisionado de lo Interior, expropió a la Sucn. Junghanns una faja de tierras que atravesaba su finca de Este a Oeste, para construir una carretera que facilitara el tránsito entre la calle Comerío y la calle Principal de Bayamón. En su punto medio la faja colindaba con la carretera militar. Cele-

(¹) Tal facultad le ha sido otorgada por la sección 6(*h*) de la Ley núm. 83 de 2 de mayo de 1941 (págs. 685, 693).

brado un juicio y analizada la evidencia presentada, resolvimos que las dos porciones que daban a la carretera militar, con un fondo de veinticinco metros valía a razón de $5 el metro, y que la parte posterior de estas dos porciones valía a razón de $3,000 por cuerda. En la porción Norte de los terrenos que entonces estimamos que tenían un valor de $3,000 la cuerda, está comprendido el predio expropiado mediante esta acción.

"No aparece, ni de la evidencia aportada en el primer caso, ni de la presentada en éste, que el Gobierno contemplara la adquisición de la última parcela al expropiar la primera, en cuyo caso hubiera sido nuestro deber aplicar la doctrina del caso de U. S.. v. Miller, 317 U. S. 369, a no ser por el hecho de la existencia de la Ley núm. 479, aprobada en 26 de abril de 1946."

Dijo además en su opinión "que el predio expropiado, teniendo en consideración la existencia de la nueva carretera, vale $10,189.41, pero, valorándolo como si no hubiera existido la carretera vale 25 por ciento menos, o sea, $7,642.06. Es éste el valor que, como cuestión de derecho, tiene el predio expropiado."

En apelación la sucesión demandada alega como único fundamento para solicitar la revocación que "el tribunal inferior erró al aplicar la Ley núm. 479 de 26 de abril de 1946 ((1) pág. 1403) al caso de autos, resolviendo que los demandados no tienen derecho a recibir el importe del justo valor de los terrenos expropiados incluyendo el incremento en dicho valor resultante de la construcción de una mejora pública."

■■■ De los autos se desprende que dos años antes de iniciarse el procedimiento de expropiación que está ante nos, el Pueblo de Puerto Rico expropió parte de la misma finca con el fin de construir una carretera que pasando a través de ésa y de otras fincas vecinas conectara por la parte sur del pueblo de Bayamón la llamada Carretera Militar con la antigua carretera que de dicho pueblo conduce al de Comerío.(²) El tribunal recurrido concluyó, como hemos visto, que el incre-

(²) La demanda de expropiación en este caso fué presentada en 14 de junio de 1949 y por los párrafos arriba copiados de la opinión del Tribunal de Expropiaciones se habrá notado que la expropiación anterior para la construcción de la carretera mencionada tuvo lugar el 20 de junio de 1947.

mento en valor recibido por el remanente de la finca debía ser deducido, proporcionalmente, al valorarse las 2.557 cuerdas que eran objeto del presente recurso. Se fundó para ello en el artículo 2 de la Ley 479 de 26 de abril de 1946 (págs. 1403, 1405). Éste reza así:

"En el caso de compra o expropiación forzosa de la propiedad particular para fines de utilidad pública o beneficio social, la indemnización deberá basarse en el valor razonable en el mercado de tal propiedad sin incluir incremento alguno por razón de espectativa fundada y razonable de que la propiedad adquirida, u otra propiedad similar a la misma, o que se encontrara dentro de la localidad en que estuviera aquélla situada, se requiera o se haya de requerir para uso público o beneficio social, o fuere necesaria para algún uso que tan sólo pudiere darle El Pueblo de Puerto Rico o cualquier agencia o instrumentalidad del mismo con poderes para la expropiación forzosa ᵒde la propiedad particular.

"En el caso de venta o expropiación forzosa de la propiedad particular a que se refiere el párrafo anterior, *la indemnización tampoco incluirá aumento alguno por razón de mejoras públicas o inversiones que haya llevado en la localidad El Pueblo de Puerto Rico a través de cualquiera de sus departamentos ejecutivos, agencias o instrumentalidades*." (Bastardillas nuestras.)

Al discutir el único error señalado, los demandados alegan que el aumento a que se refiere la disposición anterior es el incremento en valor de una propiedad como resultado de los beneficios que pueda recibir la misma con motivo de la construcción de una obra pública; que estos beneficios son calificados por los tratadistas y por la jurisprudencia en tres categorías, a saber: (1) beneficios especiales; (2) beneficios de vecindad (*neighborhood benefits*) y (3) beneficios generales; y luego de indicar lo que a su juicio se entiende por cada uno de los beneficios citados continúan diciendo que "brevemente expuesta la tesis de los demandados es que las disposiciones de la Ley núm. 479 ... deben interpretarse en el sentido de que cuando prohiben que se considere, en un pleito de expropiación 'aumento alguno por razón de mejo-

ras públicas' hechas por El Pueblo en la localidad donde están los terrenos a expropiarse, esa prohibición está limitada a aquel aumento que surge de 'beneficios especiales' o a lo sumo de *'neighborhood benefits'*, pero no incluye aquél que se deriva de 'beneficios generales;' " que "está predicada esta tesis en que a virtud de la prohibición contenida en el artículo núm. 2 de nuestra Ley Orgánica, la Legislatura de Puerto Rico carece de poderes para aprobar una disposición como la contenida en la ley que estamos considerando si ésta se interpretare literalmente ...Y por eso nuestra contención (es) no de que la Ley 479 sea inconstitucional, sino de que la disposición de la misma que nos ocupa se aplica a situaciones en que exista un *'special benefit'* pero no a las en que existe claramente un *'general benefit'* ". Insisten, además, los demandados en que "existe también otra cuestión hacia la cual deseamos llamar la atención del Honorable Tribunal. Ésta es la de que cuando se han considerado ya en un caso anterior beneficios recibidos por el remanente de una finca como resultado de la expropiación de parte de la misma para la construcción de una obra pública, en un nuevo procedimiento de expropiación contra ese remanente no se puede volver a considerar esos beneficios."

Aunque estamos enteramente de acuerdo con los demandados en que el tribunal inferior cometió el error señalado, no convenimos, sin embargo, con la tesis por ellos expuesta. Dada la interpretación que damos al artículo 2 de la Ley 479, supra, se hace innecesario definir o discutir las distintas clases de beneficios mencionados.[3] El artículo 2 no debe ser interpretado aisladamente. Tampoco deben serlo cada uno de los párrafos que le constituyen. Por el contrario, nuestro criterio es, que tanto ese artículo como los dos párrafos que le integran deben ser interpretados tomando en consideración el espíritu general que animó al legislador a aprobar la ley

[3] En 145 A.L.R. 50; 18 Am. Jur. 942, sección 298, *Prudential Ins. Co.* v. *Central Nebraska Pub. P. & I. Dist.*, 296 N. W. 752, 754 y Nichols on *Eminent Domain*, Vol. 3, sección 8.6202, pueden encontrarse definiciones de los aludidos beneficios.

general sobre la materia.(⁴)    Interpretado en esa forma, opinamos que dicho artículo sólo se refiere a aquellas mejoras públicas llevadas a cabo en la localidad por El Pueblo de Puerto Rico que están íntimamente relacionadas con una expropiación posterior.    En otras palabras, nuestra interpretación de ese estatuto es que si a virtud de una expropiación anterior una finca ha recibido beneficios y posteriormente se expropia del remanente de la misma otra parcela, al valorarse la parcela que es objeto de la expropiación subsiguiente deberán tomarse en consideración cualesquiera incrementos o beneficios recibidos por la finca expropiada con motivo de la anterior expropiación, siempre, por supuesto, que al hacerse la segunda o ulterior expropiación ésta no sea secuela o no esté relacionada con la expropiación previamente hecha. Desde luego, si la segunda o subsiguiente expropiación que se hace de una finca está relacionada con la expropiación originalmente efectuada o es continuación o secuela de ella, de conformidad con lo provisto por ese artículo, tales beneficios o incrementos no deben ser tomados en consideración al valorar la parcela expropiada.    *Cf. United States* v. *Miller*, 317 U.S. 369, 87 L. ed. 336, 342; 147 A.L.R. 55 y anotación a la pág. 66; *Scott* v. *United States*, 146 F.2d 131; *Tigertail Quarries* v. *United States*, 143 F.2d 110.    Como en el caso de autos las partes admiten, y así concluyó el tribunal inferior, que la expropiación previamente hecha con el propósito de construir el ramal en cuestión no está en forma alguna relacionada con la nueva expropiación que es objeto de este procedimiento, el Tribunal de Expropiaciones al dictar su sentencia no debió deducir del valor de la parcela expropiada el incremento recibido por la misma con motivo de la existencia de esa nueva vía de comunicación.    Si incluyendo el referido incremento dicha parcela tenía en opinión del tribunal inferior un valor de $10,189.41, ésa debió ser la justa compensación a concederse.

---

(¹) Ley de 12 de marzo de 1903, según ha sido enmendada (Estatutos Revisados de 1911, págs. 89 y siguientes).

*Debe revocarse la sentencia apelada y dictarse otra decretando que la justa compensación a ser pagada por la demandante por las 2.557 cuerdas aquí expropiadas lo constituye la suma de $10,189.41.*

El Juez Asociado Sr. Snyder no estuvo presente durante la vista del caso, mas está de acuerdo con la opinión.