Los Jueces Asociados Señores Ortiz y Belaval no intervinieron.

ROIG COMMERCIAL BANK, demandante y apelado, *v.* RAFAEL BUSCAGLIA, Tesorero de Puerto Rico, demandado y apelante.

Número 10834.

*Sometido:* 22 de abril de 1953. *Resuelto:* 19 de mayo de 1953.

*Hon. Secretario de Justicia Interino J. B. Fernández Badillo* y *Arnaldo P. Cabrera, Procurador Auxiliar,* abogados del apelante; *James R. Beverley, R. Castro Fernández* y *Francisco Castro Amy,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El Tribunal Superior de Puerto Rico, Sala de San Juan, declaró con lugar una demanda interpuesta por la entidad Roig Commercial Bank contra el entonces Tesorero de Puerto Rico, resolviendo que esa entidad corporativa, con respecto a la contribución sobre ingresos pagada por ella en los años 1943, 1944 y 1945, tiene derecho a que se le conceda un crédito, contra la contribución a pagar, medido dicho crédito por la cuantía de la contribución sobre ingresos pagada al Gobierno de los Estados Unidos sobre intereses recibidos de bonos de los Estados Unidos de América, todo ello en virtud de la sección 36(a) de nuestra Ley de Contribuciones Sobre Ingresos. El Secretario de Hacienda ha apelado para ante este Tribunal de esa sentencia, señalando, como único error, que el referido tribunal erró al resolver que la demandante tiene derecho a ese crédito.

La sección 36(a) ya mencionada concede un crédito por contribuciones sobre ingresos pagadas por corporaciones domésticas a los Estados Unidos o a un país extranjero y dispone que dicho crédito no deberá ser mayor que la proporción que el ingreso neto de fuentes fuera de Puerto Rico y el ingreso neto total del contribuyente guarda con la contribución a satisfacerse en Puerto Rico.(¹)

---

(¹) "Sección 36(a)—En el caso de una corporación doméstica la contribución impuesta por este título será acreditada con el montante de

Efectivamente, incurrió en error el tribunal a quo. Para que se pueda conceder a una corporación el crédito señalado en la sección 36 con respecto a contribuciones pagadas al Gobierno de los Estados Unidos es necesario que esas contribuciones federales se refieran a ingresos que estén también sujetos a contribución en Puerto Rico. El propósito esencial del establecimiento de tal crédito es el de evitar una doble contribución sobre el mismo ingreso. *Hubbard* v. *United States*, 17 F.Supp. 93, *certiorari* denegado en 300 U. S. 666; *American Chicle Co.* v. *United States*, 316 U. S. 450, 451; *Burnet* v. *Chicago Portrait Co.*, 285 U.S. 1. El artículo 36 debe ser interpretado conjuntamente con otros artículos de la Ley de Contribución Sobre Ingresos. Cf. *Pueblo* v. *Sucn. Junghanns*, 73 D.P.R. 648; *Pueblo* v. *De Jesús*, 70 D.P.R. 37; *Pueblo* v. *Mantilla*, 71 D.P.R. 36. La sección 15(*b*)(4) de esa misma ley dispone que el término "ingreso bruto" no incluye intereses sobre las obligaciones de los Estados Unidos, "que estarán exentos de tributación". La sección 30 determina que en el caso de una corporación o sociedad sujeta a la contribución impuesta por la sección 28 el término "ingreso

---

cualquier contribución sobre ingresos o beneficios excesivos pagada o debida durante el mismo año contributivo a los Estados Unidos, cualquier posesión de los Estados Unidos que no sea Puerto Rico o a cualquier país extranjero; *Disponiéndose*, que el montante de dicho crédito en ningún caso excederá de la misma proporción de la contribución (computada a base del ingreso neto del contribuyente sin deducir ninguna contribución sobre ingresos o beneficios excesivos impuesta por los Estados Unidos, cualquiera posesión de los Estados Unidos que no sea Puerto Rico, o cualquier país extranjero), contra la cual se concede dicho crédito, que el ingreso neto del contribuyente (computado sin deducir ninguna de dichas contribuciones sobre ingresos o sobre beneficios excesivos) derivado de fuentes radicadas fuera de Puerto Rico tiene con su ingreso neto total (computado sin tal deducción) para el mismo año contributivo. En el caso de compañías domésticas de seguros sujetas a la contribución impuesta por las secciones 41 ó 44, el término 'ingreso neto', según se usa en esta subdivisión, significa el ingreso neto definido en las secciones 43 y 44 respectivamente."

Igual crédito que el que provee la sección 36*(a)* para las corporaciones, lo concede la sección 23*(a)* a los individuos. Debemos dar un ejemplo de cómo se establece tal proporción o fórmula (Arabía, *Manual de Contribución Sobre Ingresos*, pág. 292, sección 23.2; Prentice–Hall,

neto" significa el ingreso bruto definido en la sección 31, menos las deducciones admitidas por las secciones 32 y 9. La sección 31 señala que en el caso de una corporación o sociedad sujeta a la contribución impuesta por la sección 28 el término "ingreso bruto" significa el ingreso bruto definido en las secciones 15 y 19.

Independientemente de la sección 34, que consideraremos más adelante, los intereses en discusión en este caso no podían formar parte del ingreso bruto y estaban exentos de tributación, bajo la sección 15, aplicable al caso de corporaciones en cuanto a la determinación de su ingreso bruto. Por lo tanto, el ingreso neto de la apelada (ingreso bruto menos deducciones admitidas por las secciones 32 y 9) no incluía esos intereses. Ahora bien, la sección 36, que le sirve de base esencial a la tésis de la contribuyente, establece un crédito imputable a la contribución pagadera en Puerto Rico, midiéndose dicho crédito, en parte, por las contribuciones sobre ingresos pagadas a los Estados Unidos. Pero esa sección 36 no es aplicable a la contribución federal sobre inte-

---

Federal Tax Service, Vol. 1, sección 5853; artículo 220 del Reglamento del Tesorero) por analogía, como si se tratase de una persona soltera:

| | |
|---|---:|
| Ingreso neto de fuentes radicadas en Puerto Rico | $ 10,000 |
| Ingreso neto de fuentes radicadas fuera de Puerto Rico | 5,000 |
| Ingreso neto total | $ 15,000 |
| Menos, la exención personal | 800 |
| Ingreso neto tributable | $ 14,200 |
| Contribución en Puerto Rico sobre $14,200 | $ 3,212 |
| Contribución pagada en Estados Unidos sobre $5,000 | $ 1,600 |

Importe del crédito a conceder:

$$\frac{5,000}{15,000} = (\tfrac{1}{3}) \text{ de } \$3,212.00 = \qquad \$1,070.67$$

Así tenemos que de los $1,600 pagados a los Estados Unidos el contribuyente puede tomar como crédito en Puerto Rico la cantidad de $1,070.67

| | |
|---|---:|
| Contribución | $3,212.00 |
| Menos crédito por contribución pagada en los Estados Unidos | 1,070.67 |
| Contribución a pagar | $2,141.33 |

reses de obligaciones del Gobierno de los Estados Unidos, esto es, el crédito de contribuciones federales no incluye aquella parte de esas contribuciones que se impuso por el gobierno federal sobre tales intereses, ya que esos intereses no forman parte del ingreso neto reconocido como tal en Puerto Rico a los fines de la contribución local. Como hemos visto, la sección 36 limita el crédito al resultado de una fórmula o proporción que es la siguiente, aplicándose la proporción resultante a la contribución que se hubiese pagado aquí en ausencia del crédito:

$$\frac{\text{Ingreso Neto de Fuentes Fuera de Puerto Rico}}{\text{Ingreso Neto Total de Fuentes Dentro y Fuera de Puerto Rico}}$$

Si la proporción del ingreso neto extranjero al ingreso neto total fuese de una tercera parte, el crédito estaría limitado a una tercera parte de la contribución computada en ausencia del crédito. Ahora bien, la fórmula de la sección 36 se limita a aquellos ingresos que sean considerados y reconocidos por nuestra ley como parte del ingreso neto de la contribuyente que hubiese estado sujeto a tributación en ausencia del crédito, o sea, aquellos ingresos que no forman ni pueden formar parte del ingreso bruto, por disposición de ley, bajo las secciones 31 y 15, no pueden formar parte del ingreso neto a que se refiere la sección 30 (ingreso bruto según la sección 15 menos las deducciones correspondientes). En otras palabras, las cantidades que integran el ingreso neto usado en la fórmula de la sección 36 para servir como base del crédito en cuestión, son aquellas cantidades que forman parte de la definición de "ingreso neto" que surge de las secciones 30 y 31. Los intereses sobre obligaciones del Gobierno de los Estados Unidos no forman parte de ese ingreso neto así definido, (ingreso bruto de la sección 31 menos deducciones), ya que no forman parte del ingreso bruto, según se indica en la sección 15 y según surge de la sección 31, al

adoptar esta sección la definición de ingreso bruto establecida en la sección 15. Ese criterio queda robustecido por los siguientes fundamentos:

(1) El propósito del crédito establecido en la sección 36 es el de evitar la doble tributación, o sea, el de evitar que nuestro gobierno imponga una contribución sobre aquellos ingresos que ya han sido objeto de contribución por el gobierno de los Estados Unidos. Si en virtud de las secciones ya mencionadas de nuestra ley los intereses en cuestión no están sujetos a contribución en Puerto Rico por no formar parte del ingreso bruto reconocido por la ley, no hay necesidad alguna de que la contribución federal sobre tales intereses forme parte del crédito establecido en la sección 36.

(2) La sección 30 dispone que en el caso de una corporación el término "ingreso neto" significa el ingreso bruto definido en la sección 31 (o sea, en la sección 15) menos las deducciones admitidas en las secciones 32 y 9. La sección 32, en su inciso (a) (3), admite, en parte, como deducciones, "las contribuciones pagadas o acumuladas dentro del año contributivo, a excepción: . . . de la parte de las contribuciones sobre ingresos y sobre beneficios excesivos impuestas por autoridad de los Estados Unidos, cualquier posesión de los Estados Unidos que no sea Puerto Rico, o cualquier país extranjero, que es admitida como crédito a virtud de la sección 36". Las contribuciones que forman parte del crédito señalado en la sección 36 son exceptuadas de las contribuciones que integran la deducción reconocida en la sección 32. De no haber existido la sección 36, tales contribuciones hubieran formado parte de la deducción. La contribución sobre los intereses en discusión no forma parte del ingreso bruto y, por lo tanto, no tenía que ser deducida del ingreso bruto. En su consecuencia, la deducción de contribuciones concedida en la sección 32 no incluye la contribución específica sobre intereses de obligaciones de los Estados Unidos, la cual no puede servir, por lo tanto, como excepción a tal deducción ni como

parte del crédito señalado en la sección 36. La excepción es sinónimo del crédito, y una partida no puede ser excepción de una suma total si esa excepción no es parte de la suma total. La sección 36 se refiere a otras contribuciones federales distintas a la contribución sobre los intereses en controversia.

La jurisprudencia sostiene los puntos de vista que hemos enunciado. El caso de *Hubbard* v. *United States*, supra, certiorari denegado en 81 L. ed. 873, envolvía las secciones 213(b) y 222(a) de la Ley Federal de Contribuciones Sobre Ingresos de 1926, equivalentes a nuestras secciones 15 y 36, (aunque aplicable la 222(a) a individuos, pero estableciendo la misma fórmula proporcional). La sección 213(b) excluía ciertas partidas del ingreso bruto. El contribuyente recibió ingresos de fuentes fuera de Estados Unidos que eran tributables en el extranjero pero no eran tributables en los Estados Unidos por estar excluídos del ingreso bruto por la sección 213(b)(14). Sin embargo, él alegó que se le debía conceder un crédito por tal contribución pagada en el extranjero, bajo la sección 222(a), que estableció la misma fórmula de nuestra sección 36. La Corte de Reclamaciones de los Estados Unidos rechazó la alegación del contribuyente y resolvió lo siguiente:

"El propósito primordial de las disposiciones que aparecen en varias leyes de contribuciones sobre ingresos permitiendo a los contribuyentes el acreditar a su contribución doméstica las contribuciones pagadas a países extranjeros fué el de mitigar los males de la doble contribución. *Burnet* v. *Chicago Portrait Co.*, supra, 52 S. Ct. 275, 76 L. ed. 587. La doble tributación existe solamente cuando el mismo ingreso paga contribución tanto en el extranjero como en los Estados Unidos. El salario del demandante en la Gran Bretaña, sobre el cual una contribución de $71,460.06 era pagadera a ese país, estaba exento de tributación en los Estados Unidos y no formaba parte de su ingreso neto sobre el cual eran computadas las contribuciones en este país. El pagó contribución sobre el salario solamente en la Gran Bretaña y, por lo tanto, no tenemos un caso de doble tributación. Como ya hemos visto, al demandante ya se le ha concedido el crédito a que él tenía derecho en cuanto

a contribuciones pagadas en la Gran Bretaña sobre ingresos recibidos en ese país, sobre cuyos ingresos él también ha pagado contribución en este país . . . El demandante no tiene derecho al reintegro." (²)

El mismo criterio arriba enunciado se sigue sustancialmente en *Carstairs* v. *United States*, 75 F.Supp. 683. En *United States* v. *Rogers*, 122 F.2d 485, se resuelve que si no ha habido ingreso en el extranjero, no es aplicable la fórmula de proporción establecida en una sección análoga a nuestra sección 36, ya que no habiendo numerador en la ecuación envuelta en la fórmula de proporción, el numerador sería "cero" y el resultado sería "cero". Véase, además, al mismo efecto, *Hugh C. Wallace*, 17 B.T.A. 406. El mismo "ratio-decidendi" es aplicable si el numerador no incluye alguna partida de ingresos extranjeros porque tales ingresos no formen parte del ingreso neto por no formar parte del ingreso bruto.

En el caso de *L. Helena Wilson*, 7 Tax Court 1469, la peticionaria tuvo ingresos de $20,000 en Canadá sobre los cuales ella pagó contribución en Canadá. Tales ingresos no eran tributables bajo la ley federal. Se resolvió que ella no tenía derecho alguno a acreditar la contribución pagada en Canadá contra la contribución pagadera en los Estados Unidos, no teniendo derecho al crédito señalado en la sección 131(a), análoga a nuestra sección 36. Se indicó que no era obligatoria para los tribunales de los Estados Unidos una interpretación del gobierno canadiense al efecto de que la contribución era pagadera bajo la ley federal, y se cita a *Biddle* v. *Commissioner*, 302 U.S. 573, en donde se resolvió que la contribución impuesta por el país extranjero debe ser una contribución sobre ingresos tal como ese término se usa y se define bajo el estatuto federal. En el caso citado de *L. Helena Wilson* se dice lo siguiente, a la página 1472:

---

(²) A pesar de enmiendas posteriores en la ley federal, el caso de *Hubbard* sigue siendo acatado como precedente por la Oficina Federal de Rentas Internas. (Mertens, *Federal Income Taxation*, Vol. 5, Suplemento de 1952, sección 33.07, página 415.)

"En el caso de autos la contribución pagada por la peticionaria sobre los $20,000, aunque considerada como una "contribución sobre ingresos" en el Dominio del Canadá, no constituía tal contribución en los Estados Unidos. La peticionaria no se ha colocado dentro del ámbito de las disposiciones estatutarias que ella invoca . . . Por lo tanto, no puede concederse el crédito provisto en la sección 131*(a)*(3). *New Colonial Ice Co.* v. *Helvering*, 292 U.S. 435; *United States* v. *Stewart*, 311 U.S. 60; *United States Trust Co. of New York* v. *Helvering*, 307 U.S. 57.

"Es casi superfluo el añadir que la sección 131 fué aprobada con el propósito de evitar la doble tributación del mismo ingreso en un país extranjero y en los Estados Unidos. *Hubbard* v. *United States*, 17 F. Supp. 93, certiorari denegado en 300 U.S. 666. Por la naturaleza en sí de los hechos aquí envueltos, no hay doble tributación. Lo contrario es lo que surge. Hubo una sola contribución sobre la partida en controversia, y ella fué impuesta por el Dominio del Canadá. Si prevaleciese la peticionaria y se concediese el crédito, ella escaparía de la contribución total que ella debería pagar en este país sobre aquella parte del ingreso que está sujeta a pagar en ambos países.([3]) Seguramente ese no es el resultado anticipado por estatuto."

En el caso de *American Chicle Co.* v. *United States*, supra, discutido en 29 Va.L.Rev. 120, se resuelve por la Corte Suprema de los Estados Unidos que solamente aquella porción de la contribución extranjera que se refiera a ingresos tributables por el gobierno federal puede ser acreditada bajo la sección 131, análoga a nuestra sección 36, ya que solamente esa porción así tributable por ambos países es la que da lugar a una doble tributación.

■■■■ La alegación esencial de la contribuyente es al efecto de que, no obstante lo dispuesto en las secciones que hemos discutido, en el período de tiempo relevante en este caso, había otras secciones de la ley (18 y 34) que autoriza-

---

([3]) Esto quiere decir, evidentemente, que si en la fórmula señalada en la sección 36, al ingreso claramente tributable en ambos países se le añadiese, en el numerador relativo al ingreso de fuentes extranjeras, el ingreso no sujeto a contribución en Puerto Rico, el crédito sería mayor, y la contribución total sobre los ingresos tributables sería menor.

ban a la contribuyente a incluir la contribución sobre los intereses aquí envueltos en su ingreso bruto y, por lo tanto, en su ingreso neto, teniendo la contribuyente la opción de incluir o no incluir, en su planilla, tales ingresos por concepto de intereses en su ingreso bruto o neto, y que, en caso de ejercitarse esa opción en el sentido de inclusión, era aplicable entonces la fórmula establecida en la sección 36, ya que tales intereses formarían parte del ingreso neto. Veamos.

Como ya hemos indicado, la sección 15 señala que el término "ingreso bruto" no incluye ingresos con respecto a intereses sobre las obligaciones de los Estados Unidos. La sección 31, aplicable a corporaciones, adopta la definición de "ingreso bruto" fijada en la sección 15. La sección 18 invocada por la contribuyente, tal como regía antes de ser enmendada por la Ley núm. 209 de 1949 ((1) pág. 653). disponía, en parte, lo siguiente:

"Sección 18.—Para los fines de la contribución normal solamente se concederán los siguientes créditos:
"..............................................
"(b) las cantidades recibidas como intereses de obligaciones de los Estados Unidos, de obligaciones de El Pueblo de Puerto Rico, o de cualquier subdivisión política de los mismos, *que se incluyen en el término ingreso bruto a virtud de la sección 15.*" (Bastardillas nuestras.)

La sección 34, aplicable a corporaciones y especialmente invocada por la contribuyente, disponía, en parte, antes de ser enmendada por la Ley núm. 208 de 1949 ((1) pág. 649), lo siguiente:

"Sección 34.—Para los fines de la contribución impuesta por la sección 28 solamente se concederán los siguientes créditos:
"(a) La cantidad recibida como intereses sobre obligaciones de los Estados Unidos, cualquier subdivisión política del mismo, sobre obligaciones de El Pueblo de Puerto Rico o de cualquier subdivisión política del mismo *que se ha incluído en el ingreso bruto a virtud de la sección 31.*" (Bastardillas nuestras. Ello implica el ingreso bruto definido en la sección 15.)

Existe un conflicto evidente entre la sección 34, tal como regía anteriormente, y las secciones 15 y 31. La sección 34 está literalmente equivocada, ya que reconoce como crédito la contribución sobre tales intereses que, según dice la sección 34, están incluídos en el ingreso bruto a virtud de la sección 31 (o sea, la 15). Como cuestión de hecho, esos intereses no solamente no están incluídos en el ingreso bruto bajo las secciones 15 y 31, sino que están excluídos expresa y categóricamente del ingreso bruto por esas secciones. La sección 34 concede el crédito a base del postulado expreso de que esos intereses están incluídos en el ingreso bruto bajo las secciones 15 y 31. Ese postulado es falso e inexistente, y, por lo tanto, desaparece la base del crédito.

El problema que puede producir inquietud en la conciencia judicial se refiere a la cuestión de cuál debe ser la función de un tribunal en una situación como la que se presenta en este caso, en que existe, ya sea un conflicto literal entre dos secciones, o una referencia claramente equivocada en una sección a otra. La misión de un juez no es, ni debe ser, la de sustituir su voluntad personal por la voluntad del legislador. Tal como dijo el Juez John Marshall, en una de sus opiniones "magisteriales e imperativas, con tonos de órgano de catedral" (Cardozo, "Law and Literature" citado en 52 Harv. L. Rev. 475):

"El poder judicial nunca se ejercita con el propósito de hacer cumplir la voluntad del juez; siempre se ejercita para darle efecto a la voluntad de la legislatura, esto es, a la voluntad de la ley."

Pero el propio Juez Marshall dijo, en *Marbury* v. *Madison*, 5 U.S. 137, que cuando dos leyes estén en conflicto, las cortes deben determinar cuál de las reglas conflictivas debe prevalecer, siendo esto "de la esencia del deber judicial". Nuestra obligación fundamental, en estos casos, es la de imprimirle efectividad a la intención legislativa, aún hasta el punto de sustituir o eliminar judicialmente alguna frase específica es-

tatutaria que, con diáfana claridad, haya sido incorporada a un estatuto por inadvertencia o error, hasta el punto de que esa frase derrote obviamente la intención legislativa que surja de la totalidad de la ley, ya que, en esos casos, debe prevalecer la manifiesta intención del legislador sobre la disposición literal del estatuto que esté en conflicto con esa intención. Sutherland, *Statutory Construction*, Vol. 2, sección 4926, pág. 462, 3a. ed. Tal como se indica en dicha obra, a la página 463:

"Como en todos los demás casos, las palabras pueden ser eliminadas solamente cuando tal actuación es consistente con la intención legislativa. Las cortes permiten la eliminación de palabras por una o más de las razones siguientes: cuando la palabra se encuentra en el estatuto debido a la inadvertencia de la legislatura, o cuando ello sea necesario para darle significado, efecto o inteligibilidad al estatuto, o cuando sea aparente del contexto de la ley que la palabra es superflua (*surplusage*), o cuando el mantener la palabra pudiera tener un resultado absurdo o irracional, o cuando el uso de la palabra fué una mera inexactitud o un aparente accidente, u obviamente fué erróneamente incluída, o cuando el uso de la palabra es resultado de un error clerical o tipográfico, o cuando tal eliminación sea necesaria para evitar inconsistencias o para armonizar las disposiciones de la ley, o cuando las palabras del estatuto obviamente no tengan propósito útil de clase alguna o son enteramente extrañas al objeto de la ley."

En 50 Am. Jur. 369 se dice lo siguiente:

"Aunque las cortes no pueden eliminar o cambiar el lenguaje de un estatuto para darle efecto a una supuesta intención legislativa, las palabras y las frases pueden ser alteradas o sustituídas cuando ello sea necesario para evitar repugnancia o inconsistencia en la ley, y para darle efectividad a la intención manifiesta de la legislatura. La intención legislativa debe prevalecer sobre la letra estricta de la ley, cuando el seguir el tenor literal de la ley pueda producir disposiciones contradictorias. Es cuando no surge alguna contradicción o inconsistencia que es aplicable la regla general que prohibe a un tribunal el desviarse del significado literal de un estatuto . . . Algunas disposiciones estatutarias pueden ser tan inconsistentes que ellas

no pueden ser armonizadas o reconciliadas. *Es obvio que no se le puede dar efecto a todas las disposiciones de un estatuto cuando algunas de ellas sean inconsistentes e irreconciliables.* En tal caso, como en otros casos, debe buscarse una interpretación que le imprima efectividad al propósito del estatuto y a la intención legislativa." (Bastardillas nuestras.)

Las partes que hemos citado de las secciones 15 y 31, de un lado, y de la sección 34, de otro lado, no pueden co-existir. Son inconsistentes, incompatibles y mutuamente antagónicas. Las secciones 15 y 31 excluyen los intereses en cuestión del ingreso bruto, en forma expresa y específica. La sección 34 dice, en efecto, que las secciones 15 y 31 incluyen tales intereses en el ingreso bruto. Debe adoptarse en este caso el postulado legal de que en un artículo de una ley se señala un principio absoluto y expreso de exclusión, y en otro artículo de la misma ley se hace referencia, equivocadamente, al primer artículo como conteniendo un principio de inclusión, debe prevalecer la exclusión expresa sobre la referencia incorrecta. En conjunto, la intención legislativa manifiesta en el caso de autos fué la de disponer que los intereses sobre obligaciones de los Estados Unidos no son parte del ingreso bruto. Ello queda comprobado, implícitamente, por el hecho de que nuestra Asamblea Legislativa, en virtud de las leyes 208 y 209 de 1949, enmendó las secciones 34 y 18 eliminando el crédito en cuanto a contribuciones sobre tales intereses, eliminando también las referencias equivocadas a las secciones 15 y 31. No es procedente en este caso el argumento al efecto de que tal derogación implicó un reconocimiento de la efectividad legal previa de las disposiciones derogadas, desde el punto de vista de que la legislatura consideró necesario el derogarlas. Por el contrario, tiene más validez el argumento de que la intención legislativa al llevar a cabo la derogación, fué el de subsanar o eliminar una disposición legalmente innecesaria, supérflua e inefectiva.

Se podría alegar que la función judicial debería limitarse a eliminar de la sección 34 la referencia al ingreso

bruto incluído en la sección 31 y, por ende, en la 15, dejando en pie el establecimiento del crédito. Los tribunales deben evitar la interpretación de un estatuto que pueda conducir a resultados irrazonables y absurdos. *Lozada* v. *Antonio Roig, Sucrs.*, 73 D.P.R. 266; *Orta* v. *Registrador*, 60 D.P.R. 789, 793, 794; *Pueblo* v. *Mantilla*, supra. Sería irrazonable y absurdo el dejar en pie una disposición que reconozca un crédito basado en ciertos ingresos, y al mismo tiempo disponer que esos ingresos no pueden formar parte del ingreso bruto o del ingreso neto. Si cierta partida no forma parte del ingreso bruto o neto, o sea, no puede ser computada a los fines de fijar la contribución, no es necesario el establecer un crédito medido por esa misma partida.

Las disposiciones de las secciones 34 y 18 cuya inefectividad legal hemos señalado fueron aprobadas en virtud de una inadvertencia legislativa, manifestada a través de un trasplante equivocado de disposiciones de la ley federal de contribuciones sobre ingresos. Examinemos la historia legislativa federal de las secciones aquí envueltas. Seidman, *Legislative History of Federal Income Tax Laws.*

La sección 4 de la ley federal de 1916 establecía, al igual que la 15 nuestra, la exención del ingreso bruto, en forma absoluta, de los intereses sobre obligaciones de los Estados Unidos. Pero en esa ley no se establecía el crédito que aparece ahora en nuestras secciones 18 y 34, obviamente debido a los mismos fundamentos que hemos enunciado en esta opinión. Sin embargo, ya en la ley del 1917 se aprobó la sección 1200, en donde tales intereses quedaban exentos, pero no en forma absoluta, ya que se disponía que en cuanto a obligaciones de los Estados Unidos emitidas o creadas después de septiembre 1 de 1917 tales intereses estaban exentos solamente si en la ley específica autorizando la creación o emisión de algunas de esas obligaciones se estableciese expresamente la exención. Esto es, había cierta clase de intereses incluídos en el ingreso bruto y otros no incluídos, de acuerdo con lo que

dispusiese cada ley que se hubiese referido a alguna clase determinada de obligaciones. Con ligeras variaciones, tal sección 1200 fué incorporada a las leyes federales de 1918, 1921, 1924 y 1926. Ahora bien, en la ley de 1918 se aprobaron las secciones 216 (b) y 236 (a) que corresponden a nuestras secciones 18 y 34, y que concedían un crédito por "la cantidad recibida como intereses sobre obligaciones de los Estados Unidos que están incluídos en el ingreso bruto bajo la sección 213".

La misma disposición se reprodujo en las leyes de 1921, 1924, y 1926.

Al aprobarse nuestra Ley de Contribuciones sobre Ingresos (núm. 74 de 1925), siguiendo, en gran parte, el lenguaje de su prototipo, la Ley Federal de Rentas de 1924 (*Rubert* v. *Tribl. Contribuciones y Tes.*, 74 D.P.R. 51, 64; *Behn* v. *Domenech, Tesorero*, 49 D.P.R. 808, 811), las secciones 15 y 31 establecieron la exención absoluta de tales intereses, pero también se trasplantaron de la ley federal las secciones 216 (b) y 236 (a) y fueron incorporadas a las secciones 18 y 34, no obstante el hecho de que tales secciones de la ley federal eran congruentes con la sección 213 (b) de la misma ley, ya que bajo esta última sección algunas clases de intereses estaban incluídas en el ingreso bruto, pero no eran congruentes ni compatibles con nuestras secciones 15 y 31, que no incluyen clase alguna de intereses en el ingreso bruto. En otras palabras, las secciones 216 (b) y 236 (a) de la ley federal se referían a aquellos intereses que estuviesen incluídos en el ingreso bruto bajo alguna ley federal específica creadora de alguna obligación del gobierno federal, bajo la autorización general de la sección 213 (b) (4). Pero tal situación no es posible bajo nuestras secciones 15 y 31, que exentúan todas clases de intereses sobre tales obligaciones, independientemente de lo que disponga cualquier ley federal especial.

Alega la contribuyente que la negación del crédito solicitado es contraria al Reglamento núm. 1 de Con-

tribuciones Sobre Ingresos y a la práctica administrativa establecida por el Tesorero de Puerto Rico en cuanto a ese extremo. El artículo 279 del Reglamento se aprobó con el propósito de aplicar concretamente la sección 34, y, prácticamente, repite lo expuesto en la sección 34. El artículo 280 señala la fórmula proporcional que ya hemos expuesto.

Este Tribunal ha resuelto que en caso de que una disposición de una ley sea ambigua, la práctica administrativa es importante, sirviendo como ayuda eficaz en la interpretación del estatuto. *Pyramid Products* v. *Buscaglia, Tes.*, 64 D.P.R. 828; *Puerto Rico Ilustrado* v. *Buscaglia, Tes.*, 64 D.P.R. 914. Pero cuando un estatuto es claro ningún individuo interesado puede refugiarse en la interpretación administrativa o en un reglamento en contrario, y una interpretación o reglamento administrativos que estén en conflicto con las disposiciones expresas de una ley, no pueden subsistir. *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 275; *Colón* v. *Tugwell, Gobernador*, 65 D.P.R. 924, 927. La Corte Suprema de los Estados Unidos ha resuelto que una interpretación, en un caso específico, de un funcionario administrativo o agente gubernamental que sea contraria a la ley o a un reglamento, no obliga al gobierno ni puede ser invocada por un individuo o un contribuyente, aun si el individuo ha actuado y ha cambiado su posición a base de la interpretación del funcionario. *Federal Crop Ins. Corp.* v. *Merrill*, 332 U. S. 380. En casos de contribuciones, no es aplicable, generalmente, la doctrina de "estoppel" contra el gobierno, o sea, si un principio legal es el que debe prevalecer, el gobierno no está necesariamente impedido de invocarlo por el hecho de que un funcionario haya dado una interpretación contraria a ese principio, aun si un individuo ha actuado a base de esa interpretación. 7 *Tax Law Review* 71, 79: "The Doctrine of Estoppel in Tax Cases", y casos ahí citados. Se ha seguido el aforismo del Juez Holmes al efecto de que, en sus relaciones con el gobierno, el ciudadano debe doblar las esquinas en forma rec-

tangular. *Rock Island, Arkansas & Louisiana Railroad Co.* v. *United States*, 254 U.S. 141, 143. El principio que niega la aplicación de la doctrina de "estoppel" en contra del gobierno ha sido criticada. 53 Col. L. Rev. 374, número de marzo de 1953: "Should Official Advice be Reliable?—Proposals as to Estoppel and Related Doctrines in Administrative Law." Se ha indicado que el gobierno debe también tener la obligación de doblar las esquinas con rectitud rectangular (48 Harv. L. Rev. 1281, 1299, "Hobson's Choice, and Similar Practices in Federal Taxation"), y que no se debe tratar de una calle de una sola dirección. (Opinión disidente del Juez Jackson en *Federal Crop Ins. Co.* v. *Merrill*, supra, págs. 387, 388). Pero no se trata de las relaciones privadas entre dos personas, que son las únicas afectadas por la aplicación de la doctrina de "estoppel". Las actuaciones de un funcionario gubernamental pueden afectar a toda la comunidad, y esas actuaciones no deben, generalmente, crear un estado de obligatoriedad para el gobierno, si con ello se vulnera una ley o un claro principio legal. El resultado contrario podría convertir al funcionario en legislador y en juez.

En el caso de autos no se trata de una situación de ambigüedad en el estatuto. Un anterior Tesorero tomó medidas, en el Reglamento, para aplicar secciones que forman parte literal de la ley. La inadvertencia del legislador al aprobar disposiciones conflictivas se tradujo en la inadvertencia del Tesorero al reproducir en el Reglamento esa inadvertencia y ese conflicto. La actuación incorrecta administrativa fué una secuela de la actuación incorrecta legislativa. El añadir una expresión administrativa incorrecta a una expresión legislativa también incorrecta no debe producir un resultado correcto. Si las secciones en discusión eran legalmente inefectivas, también deben ser inefectivas las actuaciones administrativas.

En el caso de *Buscaglia* v. *Liggett & Myers Tobacco Co.*, 149 F.2d 493, 496, se indica que, bajo ciertas circunstancias,

un tesorero no tendría el poder de revocar retroactivamente un reglamento o una práctica administrativa por él establecida. Sin embargo, tal criterio no es aplicable a las circunstancias de este caso, según ya las hemos expuesto.

■ Incidentalmente este Tribunal ha determinado que cuando existe incompatibilidad entre dos porciones o secciones de una ley, la última en el orden numérico de la misma debe prevalecer. *Domenech, Tesorero* v. *Corte,* 48 D.P.R. 542; *Pueblo* v. *Padilla,* 56 D.P.R. 144. Ese principio no debe ser considerado como absoluto ya que, aun si una sección de un estatuto es posterior a otra, la última en orden numérico no debe prevalecer si es contraria a la verdadera intención legislativa. Si una sección anterior de una ley está de acuerdo con la intención, política o propósito obvio de la legislatura, esa sección debe prevalecer sobre disposiciones posteriores inconsistentes que no estén de acuerdo con esa política ni con esa intención. 50 Am. Jur. 370; *Smith* v. *Board of Trustees,* 198 Cal. 301.

*Debe este Tribunal dictar sentencia revocando la dictada por el Tribunal Superior y declarando sin lugar la demanda interpuesta por la contribuyente apelada.*

El Juez Asociado Sr. Sifre no intervino.