LUIS A. RIVERA CABRERA, ÁUREA S. CORDERO GUILLAMA, ETC., recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN JUAN, SECCIÓN QUINTA, recurrido.

*Número:* O-82-749    *Resuelto:* 27 de diciembre de 1982

*Noel González Miranda*, de *Sweeting, Pons, González & Cestero*, abogado de los recurrentes; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El recurrente Rivera Cabrera presentó al Registro la escritura núm. 8 otorgada el 30 agosto, 1982 ante el Notario Noel González Miranda sobre compraventa de urbana e hipoteca que acompañó con $264.50 en pago de derechos de arancel, a tenor del número dos, apartado (c) de la Ley Núm. 3 de 12 agosto, 1982. El Registrador denegó la inscripción por razón de que el documento devenga $25 más hasta completar $314.50, toda vez que por error o inadvertencia que rompe la armonía con el propósito de duplicar los derechos, dicho apartado (c) dice $25 donde debe decir $50. El error es de elemental factura oficinesca y cede ante la realidad de la declarada intención legislativa.

La Ley Núm. 3 de 12 agosto de 1982 aumentó al doble, partida por partida, los derechos de arancel del Registro de la Propiedad estatuido por Ley Núm. 91 de 30 mayo, 1970, con la aislada excepción del número dos (c) en su primera parte. El texto de 1970 decía:

Número Dos: Por la inscripción, anotación, cancelación, liberación, respecto a cada derecho en una finca, se pagarán los siguientes derechos:

(a) .　.　.　.　.　.　.　.

(b) .　.　.　.　.　.　.　.

(c) Cuando el valor de la finca o derecho exceda de quince mil dólares se pagarán veinticinco (25) dólares por los primeros veinticinco mil dólares y dos (2) dólares por cada mil dólares o fracción de mil dólares adicionales.

El texto correspondiente en la citada Ley de 1982 dispone:

Número Dos: Por la inscripción, anotación, cancelación, liberación, respecto a cada derecho en una finca, se pagarán los siguientes derechos:

(a) .　.　.　.　.　.　.　.

(b) Cuando el valor de la finca o derecho exceda de mil (1,000) dólares se pagará dos (2) dólares por cada mil dólares o fracción de mil dólares del valor nominal de la finca hasta un valor máximo de veinticinco mil dólares.

(c) Cuando el valor de una finca o derecho exceda de veinticinco mil (25,000) dólares, se pagarán veinticinco (25) dólares[(¹)] por los primeros veinticinco mil (25,000) dólares y cuatro (4) dólares por cada mil (1,000) dólares o fracción de mil (1,000) dólares adicionales.

Esa de $25 por los primeros $25,000 es la única instancia en que no aparecen doblados los derechos, y que de seguirse

---

(¹) Debió decir —y debe entenderse— cincuenta (50) dólares.

al pie de la letra, por interacción con el precedente apartado (b) llevaría al absurdo de que una venta por $25,000 devenga $52.50 en derechos; mientras otra por $26,000 paga $31.50, presentación e impuesto de Código Político incluidos. Que se trata de un simple error de oficina o de trámite es conclusión obligada no solo por el alto relieve de contradicción con todo el cuerpo de la ley que hemos apuntado, sino por la declarada intención y propósito legislativo enmarcados en la urgencia de obtener fondos ya destinados al presupuesto, según reza el Informe de la Comisión de Hacienda de la Cámara por su Presidente señor Arrarás, del que transcribimos:

> El P. de la C. 594 propone *duplicar los derechos a pagar* por las distintas operaciones que se llevan a cabo en el Registro de la Propiedad de Puerto Rico. Esta medida aumentaría los ingresos del Gobierno en $7.7 millones anuales. Estos fondos adicionales ya han sido considerados en el cuadro de recursos que el Gobernador sometió a la consideración de la Asamblea Legislativa para el año fiscal 1983.

### RECOMENDACIÓN

> El arancel de los derechos que actualmente se pagan por las operaciones del Registro de la Propiedad se estableció en 1970. Desde entonces se ha registrado un alza notable en los costos que se incurren para llevar a cabo estas operaciones. Entendemos que esta medida es necesaria ya que permitiría allegar parte de los recursos que se necesitan para poder balancear el presupuesto que está ante la consideración de la Asamblea Legislativa. Esto evitaría, además, que se sigan afectando aún más, los servicios que se ofrecen a nuestro pueblo. (Énfasis nuestro.)

Nuestra jurisprudencia rechaza la interpretación literalista [2] de la ley, y con mayor vigor debe repudiarse el

---

[2] *Esso Standard Oil* v. *A.P.P.R.*, 95 D.P.R. 772, 785 (1968); *M. Mercado e Hijos* v. *Junta Azucarera*, 95 D.P.R. 852, 859 (1968); *Pardavco, Inc.* v. *Srio. Hacienda*, 104 D.P.R. 65 (1975); *Roig Commercial Bank* v. *Buscaglia, Tes.*, 74 D.P.R. 986–997 (1953). El criterio que aquí expresamos, luego de ulterior examen del Informe de la Cámara (en sí una exposición de motivos) es el mismo sustentado .

afincamiento y consagración de lo que a plena vista es simple error de trámite. "No es la lógica ciega a los objetivos y necesidades de nuestro ordenamiento jurídico y comunal la que debe gobernar la interpretación de nuestros códigos y leyes. Es la opuesta." *Febo Ortega* v. *Tribunal Superior*, 102 D.P.R. 405, 408–409 (1974). El problema que nos ocupa no encuentra solución simple en la prevención del Art. 14 C.C. de que al ser la ley clara y libre de toda ambigüedad, no debe menospreciarse la letra y preferir su espíritu. La discordancia que se da en una sola línea entre nueve incidencias de enmienda genera más que suficiente ambigüedad y confusión para hacer obligado el recurso al medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, cuál es la razón y el espíritu de ella. Art. 19 C.C. La literalidad puede ser ignorada cuando es claramente contraria a la verdadera intención o propósito legislativo según surja éste de la totalidad del estatuto o de la totalidad de la sección envuelta. *Clínica Juliá* v. *Sec. de Hacienda*, 76 D.P.R. 509, 520 (1954). Ya es doctrina inconmovible en nuestra jurisprudencia que la "ley hay que leerla y considerarla en su totalidad, no fraccionalmente y para encontrarle su significado el tribunal tiene que tener en cuenta el propósito de la misma". *Cirino* v. *Fuentes Fluviales*, 91 D.P.R. 608, 616 (1964).

Ya hemos visto cómo tomado el estatuto de arancel de 1982 en su integridad dispositiva de duplicación de *todos* sus apartados, el número dos (c) debe entenderse como que dice cincuenta (50) en vez de veinticinco (25) dólares. Los estatutos se interpretan en su conjunto y no por secciones aisladas, y debe rechazarse el formalismo lógico pero de poca realidad. *Sales* v. *Samac Motor Corp.*, 92 D.P.R. 529, 540–541 (1965). Aun cuando el idioma en su interpretación literal contradiga el propósito de una disposición estatutaria, lo que debe ceder es el idioma, y no la realidad

por el Registrador Sr. Etienne Badillo en *Levitt Homes, Inc.* v. *Registrador*, O-82-639, S. 17 noviembre, 1982.

que motiva el estatuto. *Pueblo* v. *Tribunal Superior*, 104 D.P.R. 363, 366 (1975). La interpretación judicial debe ser ágil y no hermética en propiciar la realización del verdadero propósito de la ley y dar el pleno valor de su texto en protección del interés objeto de legislación. La errata no prevalecerá. No obstante, por ser la ley la primera y más accesible fuente de información pública sobre el arancel vigente, la Asamblea Legislativa debe corregirla.

*Se confirma la calificación del Registrador.*

Los Jueces Asociados Señores Torres Rigual y Rebollo López disintieron en opinión y voto separados.

—O—

Opinión disidente del Juez Asociado Señor Rebollo López.

Me veo obligado a disentir de la opinión de la mayoría de este Tribunal aun cuando sea por medio de unas muy breves palabras.

La misma establece un precedente peligroso: resuelve este Tribunal que allí donde una ley dice $25 debe decir $50. La gama de posibilidades que abre esta decisión es ilimitada; se me ocurre de momento que en un futuro a alguien se le pueda ocurrir que donde dice "delito menos grave" debe decir "delito grave", o que donde dice "cinco años de prisión" deba decir "diez años de prisión", etc.

En adición a ser en extremo peligroso, es totalmente innecesario: su corrección —si es que en realidad la intención legislativa es la que indica este Tribunal— es sencillísima: una simple enmienda a esos efectos por parte de nuestra Asamblea Legislativa.

La calificación del señor Registrador en el presente caso debería ser revocada.

—O—

Voto disidente del Juez Asociado Señor Torres Rigual.

Disiento porque considero que, como no hay ambigüedad

en el texto del estatuto, no podemos menospreciar su letra bajo pretexto de cumplir su espíritu. Art. 14 del Código Civil, 31 L.P.R.A. sec. 14. Se trata propiamente de un error de la Asamblea Legislativa que debe ser corregido por ella misma y no por este Tribunal, mediante un simple fíat judicial.