Aponte Hernández, Juez Ponente
*1069 TEXTO COMPLETO DE LA SENTENCIA
La parte apelante, el señor Gregorio Rivera Class, solicita se revoque la sentencia emitida el 8 de noviembre . de 2001 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante la cual, se le ordenó al apelante el pago de $900.00 mensuales por concepto de pensión alimentaria de ex-cónyuge a la señora Rosario Rodríguez Alvarez y le impuso el pago de $1,000.00 por concepto de honorarios de abogado.
Por los fundamentos que expondremos a continuación, se modifica el dictamen del Tribunal de Primera Instancia y así modificado se confirma.
I
El señor Gregorio Rivera Class, apelante, y la señora Rosario Rodríguez Alvarez, apelada, contrajeron matrimonio en el año 1953. Estuvieron casados durante cuarenta y cinco (45) años y procrearon cuatro (4) hijos que al presente son todos mayores de edad. El 29 de mayo de 1998, fue declarado roto y disuelto el vínculo matrimonial por la causal de separación. El 28 de octubre de 1998, es decir, cinco (5) meses después, la apelada radicó una solicitud de alimentos ex-cónyuge a tenor con el Artículo 109 del Código Civil de Puerto Rico, 31 L. P.R.A. see. 385. En la antedicha solicitud, la señora Rodríguez Alvarez indicó, en síntesis, que no contaba con medios para asegurar su subsistencia, que durante todos los años de matrimonio no realizó ningún trabajo asalariado, que tiene muchas necesidades personales y que el señor Rivera Class tiene un ingreso mensual de $3,483.00 por concepto de pensión federal. Le solicitó al foro de instancia que le concediese una pensión alimentaria ex-cónyuge de $800.00 mensuales y le impusiera el pago de $600.00 por concepto de honorarios de abogado de ésta al apelante. Oportunamente, el señor Rivera Class presentó su contestación a la demanda y argumentó que la señora Rodríguez Alvarez recibía una pensión del Seguro Social de la cuenta de él, continuaba viviendo el hogar ganancial y tenía el uso y control de un vehículo ganancial. Alegó, además, que ella debía agotar el remedio que provee el Artículo 144 del Código Civil de recurrir primero a los parientes y que él tenía otras obligaciones porque había contraído nuevo matrimonio y le pasaba una pensión de $435.00 mensuales para cuatro nietos.
Luego de los trámites procesales de rigor, el Tribunal de Primera Instancia emitió sentencia el 15 de febrero de 2001, declarando con lugar la demanda por alimentos, ordenando el pago de $900.00 mensuales por concepto de pensión alimentaria ex-cónyuge a favor de la señora Rodríguez Alvarez e imponiendo el pago de $600.00 por concepto de honorarios de abogado. El apelante solicitó enmiendas a la determinación de hechos para que se corrigiera la referida sentencia, por haberse omitido en la "Relación de Hechos", la suma correspondiente a los gastos mensuales de la apelada. Además, solicitó reconsideración, por entender que la cuantía de $900.00 mensuales por concepto de pensión alimentaria que se le había impuesto era excesiva y no guardaba relación con los gastos y necesidades que la señora Rodríguez Alvarez pudo establecer en el juicio, ni tomaba en consideración los beneficios que ella recibía por concepto de seguro social del señor Rivera Class. Luego de varios trámites procesales que no es necesario reseñar, el 8 de noviembre de 2001, el foro de instancia emitió la sentencia enmendada aquí recurrida. Mediante la misma se suplió la cifra omitida en el apartado número 7 de la "Relación de Hechos", consignando la cifra de $665.00 antes omitida; pero se mantuvo la pensión alimentaria ex-cónyuge en $900.00; y se aumentó de $600.00 a $1,000.00 la partida correspondiente a honorarios de abogado de la apelada.
Inconforme, el señor Rivera Class presentó oportunamente su escrito de apelación en el que señala los siguientes cuatro errores:

“Erró el Honorable Tribunal de Primera Instancia al no desestimar la demanda por la demandante no haber acudido antes a pedirle alimentos a los parientes próximos.

Erró el Honorable Tribunal de Primera Instancia al imponer una pensión alimentaria excesiva que no guarda relación con los gastos y necesidades que se alegaron en el juicio.

*1070
Erró el Honorable Tribunal de Primera Instancia al no acreditarle a la cuantía de la pensión alimentaria la cantidad que recibe la demandante-apelada por concepto de seguro social de la cuenta del demandado-apelante.

Erró el Honorable Tribunal de Primera Instancia al aumentar los honorarios de abogado de la sentencia enmendáda, ya que la abogada de la demandante no realizó ninguna otra labor en el caso. ”

El 10 de enero del año en curso, la señora Rodríguez Alvarez presentó su escrito en oposición.
Contando con el beneficio de la comparecencia de ambas partes, nos vemos en posición de resolver.
II
El Artículo 109 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 385, dispone que:

"Si decretado el divorcio por cualesquiera de las causales que establece la see. 321 de este título, cualesquiera de los ex cónyuges no cuenta con suficientes medios para vivir, el Tribunal de Primera Instancia podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.

El tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:

(a) Los acuerdos a que hubiesen llegado los ex-cónyuges.

(b) La edad y el estado de salud.

(c) La cualificación profesional y las probabilidades de acceso a un empleo.

(d) La dedicación pasada y futura a la familia.

(e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.

(jj La duración del matrimonio y de la convivencia conyugal.

(g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.

(h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.

Fijada la pensión alimenticia, el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex- cónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato."

Es un principio medular de nuestra jurisdicción que la institución de alimentos tiene un carácter dinámico y está revestida del mayor interés público. González v. Suárez Milán, 131 D.P.R. 296 (1992). En igual medida, los dictámenes sobre pensiones alimentarias siempre están sujetos a modificaciones, según varíe sustancialmente de un lado la capacidad del alimentante para proveer alimentos o del otro la necesidad del alimentista. Josefina Cantellops v. Sergio Cautiño Bird, 146 D.P.R._(1998), opinión emitida el 16 de octubre de 1998, 98 J.T.S. 137; Negrón Rivera y Bonilla, Ex-parte, 120 D.P.R. 61 (1987); Valencia Ex-parte, 116 D.P.R. 909 (1986).
Nuestro Tribunal Supremo ha reiterado la norma de que la mujer divorciada no tiene un derecho per se a ser *1071 alimentada por su ex-esposo. Véase, Toppel v. Toppel, 114 D.P.R. 16 (1983); Casiano v. Tribunal Superior, 101 D.P.R. 327 (1973). Para poder reclamar derecho a recibir alimentos bajo la doctrina de estos casos, la mujer tiene que surgir como cónyuge inocente en el pleito de divorcio, demostrar que no cuenta.'con medios suficientes para vivir y establecer la capacidad económica del ex-marido. El caso de Milán Rodríguez v. Muñoz, 110 D.P.R. 610 (1981), y posteriormente la Ley Núm. 25 del 16 de febrero de 1995, que enmendó el artículo 109 del Código Civil, supra, extendieron el beneficio de recibir alimentos tanto a la mujer como al hombre luego del divorcio. Por otra parte, el criterio de cónyuge inocente ha ido desapareciendo según fue discutido durante el debate legislativo que precedió la aprobación de la Ley Núm. 25, supra. No obstante, los criterios tradicionales basados en la necesidad del alimentista y los recursos económicos del obligado se han mantenido.
Se desprende del propio texto del Artículo 109 del Código Civil de Puerto Rico, supra, que la concesión de los alimentos depende de la sana discreción del tribunal. Véase, Toppel v. Toppel, supra. Por su naturaleza provisional o transitoria, los mismos sólo deben subsistir mientras subsiste la situación que lleva a la corte a concederlos. Meléndez v. Tribunal Superior, 77 D.P.R. 535 (1954).
Nuestro ordenamiento jurídico señala, además, que la obligación de dar alimentos cesa, entre otras razones, cuando el alimentista puede ejercer un oficio, profesión o industria, o ha adquirido un destino o mejorado su fortuna, de suerte que no le es necesaria la pensión alimenticia para su subsistencia. Artículo 150, inciso (3), del Código Civil de Puerto Rico, 31 L.P.R.A. see. 569.
El Tribunal Supremo de Puerto Rico ha expresado que precisa señalar que hay una gran diferencia entre el derecho de alimentos entre cónyuges y el derecho a alimentos entre ex-cónyuges. En el primer caso, que se rige por los artículos 142, 143 y 146 del Código Civil, 31 L.P.R.A., secciones 561,562 y 565, respectivamente, se establece la obligación de un cónyuge de proveer alimentos al otro, señalándose como criterios de lo que constituye alimentos "lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia." Artículo 142, supra. Esta obligación cesa, una vez se decreta el divorcio. Luego del divorcio, la obligación de alimentar al ex-cónyuge está regulada por el Artículo 109 del Código Civil de Puerto Rico, 31 L.P.R.A., see. 385. Toppel v. Toppel, supra.
Cónsono con lo anterior, el Artículo 143 del Código Civil de Puerto Rico, supra, dispone sobre aquellos obligados a suministrarse alimentos. Dicho artículo señala, en lo pertinente, lo siguiente:

"Están obligados recíprocamente a darse alimentos, en toda la extensión que señala la see. 561 de este título:

(1) Los cónyuges.

(2) Los ascendientes y descendientes.

(3) El adoptante y el adoptado y sus descendientes".

[...]”

Por su parte, el Artículo 144 de nuestro ordenamiento jurídico establece un orden para reclamar los alimentos, a saber:

"La reclamación de alimentos, cuando proceda y sean dos o más los obligados a prestarlos, se hará por el orden siguiente:

(1) Al cónyuge.

(2) A los descendientes.

(3) A los ascendientes también del grado más próximo.

(4) A los hermanos.

Entre los descendientes y los ascendientes se regulará la gradación por el orden en que sean llamados a la 
*1072
sucesión legítima de la persona que tenga derecho a los alimentos."

El Código Civil no relaciona o armoniza el Artículo 109 con el orden establecido en los artículos 143 y 144 de dicho Código, aunque resulta obvio que dichos artículos atienden un mismo propósito de ley "en materia de prestación de alimentos bajo la premisa, incuestionablemente válida, de que sobre los fondos y el erario público no debe exclusivamente recaer la obligación de proveer para la subsistencia de los menesterosos." Milán Rodríguez v. Muñoz, supra.
El propósito del Artículo 109 del Código Civil de Puerto Rico, supra, consiste en reconocer entre ex-cónyuges la relación de parentesco para fines del Capítulo 71 del Código Civil, que rige sobre "quién debe alimentar y hasta qué extremo." El parentesco por afinidad que existe entre cónyuges, vigente el matrimonio, y aquel otro que el Artículo 109 retiene para propósitos de socorro económico luego del divorcio, son dos situaciones distintas. La primera, capaz de generar un vínculo de parentesco tan estrecho y perfecto en el orden espiritual y económico, no es tema de esta decisión. Nos interesa aquí la figura jurídica de ex-cónyuge del Artículo 109 del Código Civil, que no ocupa el lugar o sustituye la del "cónyuge" que señalan los artículos 143 y 144, como proveedor-alimentante. Realmente, los artículos 109, 143 y 144 del Código Civil, supra, son fuentes paralelas en nuestra jurisdicción respecto a la responsabilidad alimentaria se refiere. Aunque el primer señalamiento de error no fue cometido, por razón de que la señora Rodríguez Alvarez no venía obligada a reclamar primero alimentos a sus parientes próximos de sangre. No obstante, ello no quiere decir que no existan más personas obligadas a socorrerle en prestación de alimentos porque respecto a las cuales se puede repetir, vía demanda de tercero en este caso, contra los llamados en el Artículo 143 del Código Civil, supra, conforme al orden del Artículo 144 del Código Civil, supra.
Ill
Al interpretar el articulado del Código Civil, en este caso los artículos 109, 143 y 144, debe hacerse de manera flexible "sin ceñirse a conceptos rígidos que impidan o dificulten lograr equitativamente los propósitos importantes que informan la institución de alimentos en nuestro ordenamiento jurídico." González v. Suárez Milán, supra. A su vez, nuestro más Alto Foro ha señalado de manera clara y contundente que los alimentos entre ex-cónyuges tienen su fundamento en el deber jurídico que establece el Artículo 109 del Código Civil, supra, de prestarse mutuo socorro cuando no cuenten con medios suficientes para vivir Soto López v. Colón, 143 D.P.R. 282 (1997), lo que también es sustrato básico de los artículos 143 y 144 del Código.
El Artículo 109 del Código Civil, supra, concede amplia discreción al juzgador, dentro de una serie de consideraciones, al imponer una pensión alimentaria ex-cónyuge. Entre las consideraciones se encuentra los acuerdos a que hubiesen llegado los ex-cónyuges, la edad y estado de salud, las cualificaciones, profesionales y probabilidades de acceso a un empleo, la dedicación pasada y futura a la familia, la colaboración con su trabajo, la duración del matrimonio y convivencia conyugal, el caudal y medios económicos y necesidades de uno y otro ex-cónyuge, y cualquier otro factor que considere apropiado dentro de las circunstancias del caso. Los artículos 143 y 144 persiguen igual interés social. En la medida que el Artículo 109 del Código Civil no le reconoce al Artículo 105 del Código Civil "ruptura completa del vínculo matrimonial" cuando se trata de la responsabilidad alimentaria entre ex-cónyuges, encontramos que la fuente generadora de obligación alimentaria en nuestro derecho sustantivo se encuentra en los artículos 109, 143 y 144. A tal respecto, otro panel de este Tribunal de Circuito de Apelaciones (Arbona Lago, Giménez Muñoz y Salas Soler) adscrito al mismo Circuito Regional II, el 30 de noviembre de 1995, resolvió como sigue en la causa KLCE-95-0404, lo que aquí también adoptamos:

“Conforme a lo expuesto, desde 1902, nuestro ordenamiento sustantivo conjuga estas dos fuentes distintas (Arts. 109 y 143 C.c.) de responsabilidad sobre alimentos entre parientes; por afinidad y consanguinidad 
 en el art. 143 C.c. y entre ex-parientes 
 por afinidad únicamente en el art. 109 C.c. El art. 144 C.c. se encarga del orden "...cuando proceda y sean dos o más los obligados a prestarlo...". No obstante, el Art. 144 C.c., antes y ahora, aparenta ignorarla existencia del art. 109 en el Código.

*1073
Ciertamente, el legislador, del 1902 y 1942, y ahora el del 1995, no efectuó cambio alguno en el art. 144 C.c., para que este último precepto de ley reconociese algún rango de prelación entre los postulados del pre-existente artículo 143 del Código Civil y el emergente y muíante artículo 109. C.c., que hace cien años se inauguró en nuestro Código Civil a la par del divorcio y ha sufrido ya dos enmiendas.

(3)

La obligación que consagra el artículo 109 C.c. ha sido objeto de análisis por reconocidos tratadistas y estudiosos del derecho de familia. En tal proceso, atado al devenir histórico, algunos opinan que la obligación del art. 109 C.c. brota del deber moral de proveer alimentos al cónyuge inocente 
 que por causas del divorcio no cuenta con medios suficientes para vivir. 
 Otros la enmarcan como obligación jurídica dimanente de los artículos 89 
 y 143. 
 En Suria v. Fernández, 101 D.P.R. 316 (1973), se expone que ello "no es otra cosa que la proyección mas allá de los días felices, de la obligación del hombre de ayudar y socorrer a su mujer". Es decir, que aunque ya no existe el deber entre cónyuges, por razón a que lo hubo, a partir del divorcio nace una obligación derivativa para continuar proveyendo.

Se considera también, en época más reciente, que el art. 109 C.c. debe tener un enfoque rehabilitador. 
 Se sugieren períodos de tiempo de ayuda para evitar el disloque económico que el cambio en el estado civil engendra en muchas ocasiones. Otros consideran que el art. 109 C.c. ya no tiene razón de ser y recomiendan su total eliminación, 
 o que tal derecho quede siempre condicionado a la imposibilidad de que los parientes no puedan proveer los alimentos. 

Esta última línea de pensamiento sustenta que hoy en día la posición y situación de la mujer es muy diferente a la de su homologa de principio de siglo 
 y que, por regla general, la mujer ha superado aquella gran desigualdad de acceso a las fuentes de trabajo 
 y sostén, que requirió la legislación que hasta hoy nos dura. Por tanto, tal razonamiento promulga que los ex-cónyuges, independiente de género, se encuentran prácticamente en igualdad de condiciones para lograr el sustento, 
 inmediatamente o a muy corto plazo a la ruptura del vínculo matrimonial. De tal forma se propone que salvada ya la abismal diferencia entre ambos géneros, en cuanto a capacidad para generar ingresos, en gran medida también desaparece la necesidad del Artículo 109 del Código Civil como fuente de apoyo económico post divorcio y a tiempo indefinido. Ello también permite la implementación cabal del mandato del artículo 105 del Código Civil, en cuanto al efecto de "ruptura completa", como ha ocurrido ya con relación a la cuota usufructuaria viudal, luego de la enmienda del Artículo 761 del Código Civil, 
 31 L.P.R.A. 2411, por la Ley Núm. 25 de 8 de diciembre de 1990.

Estudiosos del derecho de familia recomiendan al art. 109 C.c. como medida transitoria y de reajuste económico-social. 
 Nuestra realidad social en el ámbito de auxilio familiar, inclusive el económico post divorcio, está íntimamente ligada y se identifica plenamente con las líneas de parentesco consanguíneo. El ex-pariente por afinidad, que resulta ser el ex-cónyuge, repetidamente se convierte en blanco propicio donde descargar más del mismo veneno que en un principio disolvió la unión. Ello se agudiza cuando el cónyuge alimentante contrae nuevas nupcias. 
 Tal conducta sustrae parte de lo que se busca en el divorcio. Creemos que abonará a la paz social, al descargo de los calendarios judiciales y a restringir el abuso del derecho, legislar para limitar el Art. 109 C.c. como medida de ajuste socio-económico provisional, para solventar a corto plazo disloques en el sostenimiento causados por el divorcio. Se trata, pues, de labor para el legislador.

Colofón a toda esta literatura, surge el interés de dar un mayor sentido y valor al mandato del art. 105 C. c., 
 en proveer sosiego y tranquilidad a aquellos dos seres que tuvieron que llegar a tan triste decisión de "ruptura completa" y permitir que los artículos 95 y 105 del Código Civil, 31 L.P.R.A. 301, 381, logren eficacia cabal en cada uno de sus dos supuestos, personal y económico.

*1074 Los cambios del 1975 al 1976, que vanaron la redacción de varios artículos del Código Civil con el propósito de igualar los derechos de ambos cónyuges, no alcanzaron al art. 109 C.c. No fue hasta que en Millón Rodríguez v. Muñoz, supra, ante "un trato diferente, injustificado y discriminatorio contra el hombre por razón de su sexo..." (página específica 615) se salvó tal sub-inclusión, reconociendo la facultad de los tribunales para extender los beneficios del art. 109 C.c. al ex-cónyuge de cualquier género, a la vez que reconoció que "hoy los dos tienen iguales oportunidades lo que implica deberes". (Página específica 617).

Aun con los cambios sustanciales al art. 109 C.c., que emergen de la Ley Núm. 25 de 16 de febrero de 1995, 
 el Código no relaciona o armoniza el Art. 109 C.c. con el orden establecido en los Arts. 143-144 del Código Civil, aunque claramente los artículos 109 y 143-144 atienden un mismo propósito de ley "...bajo la premisa, incuestionablemente válida, de que sobre los fondos y el erario públicos no debe exclusivamente recaer la obligación de proveer para la subsistencia de los menesterosos." Millón Rodríguez v. Muñoz, supra, pág. 614. Es función indelegable de la Rama Judicial suplir cualquier falta de armonía que pueda surgir del cuerpo sustantivo del Código Civil. No obstante, como tantas veces ocurre, la realidad social es también ángulo y perspectiva válida para el juzgador en su función más limitada de interpretación y armonización del derecho sustantivo.

IV

Dictamen

Debemos recurrir a la hermenéutica para solventar un aparente disloque en la armonía del Código Civil. Desde su inicio en el cuerpo normativo, el Art. 109 C.c. no se refleja en los Arts. 143-144 C.c., aunque el primero complementa las disposiciones de los dos últimos, al expandir la fuente obligada. A tal efecto se ha señalado, desde hace ya mucho tiempo, que:

"Nuestra obligación fundamental, en estos casos, es la de imprimirle efectividad a la intención legislativa, aun hasta el punto de sustituir o eliminar judicialmente alguna frase específica estatutaria que, con diáfana claridad, haya sido incorporada a un estatuto por inadvertencia o error, hasta el punto de que esa frase derrote obviamente la intención legislativa que surja de la totalidad de la ley, ya que, en esos casos, debe prevalecer la manifiesta intención del legislador sobre la disposición literal del estatuto que esté en conflicto con esa intención". Roig Commercial Bank v. Buscaglia, Tes., 74 D.P.R. 986, 997-8 (1953). Cf. Clínica Juliá v. Sec. de Hacienda, 76 D.P.R. 509, 520 y ss. (1954): Banuchi v. Corte, 64 D.P.R. 112, 120 (1944); Descartes, Tes. v. Tribl. Contrib. y Sucn. Cautiño, 71 D.P.R. 248, 253) 1950; Pueblo v. Mantilla, 71 D.P.R. 36, 43-44 (1950); Calaf v. See. Hacienda, 76 D.P.R. 577, 584 (1954).

En esta tarea judicial, el criterio rector lo constituye, por tanto, la importancia '[d]el motivo legislativo presumido’. L. Kanowitz, 'Benign' Sex Discrimination: Its Trouble and Their Cure, 31 Hastings L.J. 1379, 1413 (1980). En esta misión de averiguar la mens legislativa, hemos de evitar guiarnos, en lo posible, por una mecánica literal y eludir mirar las palabras y frases con una óptica empañada, estereotipada o de clisé que adjudique a dicho Poder un interés a destiempo discriminatorio y excluyente. "Millán Rodríguez v. Muñoz, supra, pág. 619.

(1)

El propósito obvio histórico-legislativo del Art. 109 C.c. luego de la enmienda del 1995, sigue siendo el mismo y consiste en continuar reconociendo entre ex-cónyuges relación de parentesco para fines del Capítulo 71 del Código Civil, que rige sobre "quién debe alimentary hasta qué extremo". El hecho de que el Art. 109 C.c. se ubique en el Capítulo 47, que trata sobre los "efectos del divorcio", no altera su propósito. Ello solo evidencia que el legislador quiere que en tanto y en cuanto acciona el Art. 109 C.c., se limita el efecto desvinculante de los artículos 95 y 105 C.c. 
 en cuanto al divorcio.

*1075
(2)

El orden a responder en alimentos es tan crucial como la responsabilidad misma. Por lo tanto, se trata de un asunto sustantivo principal que tampoco podemos alterar mediante fiat judicial. Como hemos ya dicho, ello corresponde al legislador y dentro del contexto total del Código Civil. 

Entendemos que la ley sustantiva provee a los aquí litigantes, y a toda persona que se encuentre en iguales circunstancias, dos fuentes paralelas de obligación alimentaria; la del Art. 109 del Código Civil, supra, y las de los Arts. 143-144 C.c.

Resolvemos que la obligación que el Art. 109 C.c. impone al cónyuge divorciado, corre paralela a los supuestos (2), (3) y (4) del Art. 144 C.c. Es decir, luego del divorcio, el ex-cónyuge del Art. 109 C.c., no sustituye al primer supuesto de los artículos 143 y 144 C.c. (cónyuge), pero converge y es co-llamado en igual raneo con cualesquiera de los supuestos del Art. 144 del C.c.: segundo (descendientes), tercero (ascendientes) y cuarto (colaterales), en forma de mancomunidad simple, de acuerdo a los respectivos medios de fortuna de cada sujeto obligado.

Esta solución encuentra apoyo en el postulado del Artículo 145 del Código Civil, 31 L.P.R.A. 564, el que en su primer párrafo dispone que "cuando recaiga sobre dos o más personas la obligación de dar alimentos, se repartirán entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo...". 
 (Enfasis suplido)

Respecto a la obligación impuesta por dicho artículo 145 C.c., se ha resuelto que:

"Consecuentemente, para una cabal determinación de en qué caso y hasta qué punto deba repartirse entre los dos o más obligados a dar alimentos el pago de la pensión en cantidad proporcionada a su caudal respectivo (Art. 145 C.C.), forzoso es remitirnos a la apreciación de las circunstancias por el juez, según la prueba que habrá de hacerse en el juicio. Corresponde probar a quien reclame crédito por pago en exceso de su parte proporcional dentro de la obligación solidaria, y tendrá derecho a crédito si el juez estima su alegación y al fijar la pensión deja a salvo y reserva su derecho para repetir en su día contra la otra parte obligada."Mundo v. Cervoni, 115 D.P.R. 422, 427.

A la luz de las consideraciones que debe tener en cuenta el juzgador, el Tribunal de Instancia contó con el siguiente marco de referencia al determinar el monto de la pensión ex-cónyuge que solicitó la señora Rodríguez Alvarez: dicha alimentista cuenta con 72 años de edad, padece de presión y colesterol altos (para los que requiere medicamentos regularmente) y de desbalance y depresión; no tiene estudios universitarios y nunca ha trabajado fuera del hogar; procreó cuatro hijos con el señor Rivera Class en su matrimonio de 45 años de duración y se dedicó a la crianza de los hijos y a atender a su esposo; fue totora de su esposo y colaboraba en todas sus actividades; los ingresos del hogar provenían en su totalidad de las aportaciones del esposo; cuando se separaron, el señor Rivera Class le proveía mensualmente $920.00 para sus necesidades y $200.00 para gastos de automóvil; los únicos ingresos fijos a que tiene derecho la señora Rodríguez Alvarez son $198.00 de beneficios del Seguro Social de su ex-esposo; y los ingresos del señor Rivera Class ascienden a $3,500.00 mensuales. Además, el Tribunal de Instancia tuvo ante sí la relación de gastos del señor Rivera Class.
Surge del escrito presentado por el señor Rivera Class que los gastos mensuales de la señora Rodríguez Alvarez suman $890.00 y que al descontarle unas aportaciones voluntarias montantes a $224.00 que recibe de una nieta, queda un balance de $666.000. Dicha cifra guarda relación con la partida número 7 de la relación de hechos de la sentencia que expresa: "[l]a demandante tiene una serie de gastos mensuales, que suman la cantidad de $665.00."
A base de la cifra antes indicada es que el señor Rivera Class alega que erró el Tribunal de Instancia al imponerle una pensión de $900.00 para su ex-cónyuge. No le asiste la razón. La imposición de alimentos ex- *1076 cónyuge dependerá de la sana discreción del Tribunal tomando en consideración todos los factores contemplados en el artículo 109 del Código Civil, supra, antes mencionados. Toppel v. Toppel, supra.
De los documentos obrantes en autos, se desprende que la pensión alimentaria ex-cónyuge impuesta al señor Rivera Class guarda relación con el margen de discreción que tenía el juzgador para establecerla y no resulta excesiva, por lo que no se cometió el segundo error señalado.
IV
De otra parte, nuestro Tribunal Supremo ha determinado que es válido el pago parcial o total de una pensión alimentaria a través del sistema de seguro social. Martínez v. Rivera Hernández, 116 D.P.R. 164 (1985). Por consiguiente, el Tribunal de Primera Instancia debió acreditarle la suma de $198.00 a la antedicha pensión alimentaria, y al no hacerlo cometió el tercer error señalado.
y
Sabido es que los tribunales, en virtud de la Regla 44.1 (d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, tienen facultad para imponer el pago de una suma por concepto de honorarios de abogado cuando una parte haya actuado con temeridad o frivolidad durante el proceso litigioso. Según la doctrina prevaleciente, procede imponer el pago de honorarios de abogado a aquel litigante perdidoso que "por su terquedad, obstinación, frivolidad o insistencia -en actitud desprovista de fundamentos-, obliga a la parte contraria a asumir innecesariamente las molestias, gastos e inconvenientes de un pleito." Vega v. Luna Torres, 126 D.P.R. 370 (1990).
El señor Rivera Class presentó una moción solicitando determinaciones adicionales de hechos y dos mociones de reconsideración debido a que en la sentencia original emitida el 15 de febrero de 2001 por el Tribunal de Primera Instancia, no se incluyó la suma de los gastos mensuales de la apelada, dejándose en blanco el espacio que la misma sentencia reservó para ello. Ante dicha omisión quedaban incompletos los fundamentos para la pensión alimentaria impuesta. Además, que entendió que era excesiva la pensión fijada, y que se le debía acreditar los beneficios de Seguro Social que recibía la señora Rodríguez Alvarez. Dicha actuación por el señor Rivera Class, no constituyó temeridad y no se le debe penalizar por ello. Sin embargo, en la sentencia enmendada recurrida se aumentó sin ninguna justificación de $600.00 a $1,000.00 la partida por concepto de honorarios de abogado. Se cometió el cuarto error señalado.
VI
Por los fundamentos expuestos anteriormente, se modifica la sentencia apelada como sigue:
1. Se le acredita a la pensión alimentaria ex-cónyuge de $900.00, el pago mensual de $198.00 de Seguro Social, quedando un balance de $702.00;
2. Se reduce la partida de $1,000.00 por concepto de honorarios de abogado a la cantidad de $600.00; y así modificada se confirma.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 64
1. Véase Emilio Menéndez, Lecciones de Derecho de Familia, 1 ed, Editorial Univ. P.R., San Juan, 1976-1981, pág. 127.
2. Véase Eduardo Vázquez Bote, Los alimentos al ex-cónyuge en el divorcio vincular, Notas acerca de una interpretación armónica, 10 Rev. Jur. U. Int., P.R., p. 286-287 (1976).
*1077 3. Los tratadistas Colín y Capitant señalan que el fundamento de la obligación se halla en el perjuicio que el esposo culpable, al hacer por su falta necesario el divorcio, ha podido causar al otro cónyuge, si éste no tiene recursos para subsistir. Curso elemental de Derecho civil, T.I, p. 757.
4. "Los divorciados no son cónyuges. Al disolverse el matrimonio dejaron de ser cónyuges. Esto es bien claro. Ya no hay cónyuges y ya no puede ser de aplicación el artículo 143. La pensión que el Tribunal pueda asignar a la mujer divorciada (Art. 109 C.C.) no tiene el carácter de alimentos... Tampoco corresponde al deber del que era marido el satisfacer las necesidades de la mujer (Art. 89 C.C.) porque dejó de ser la mujer del marido... La necesidad o falta de medios... será debido a la disolución del matrimonio, que es el fundamento que determina la pensión a la mujer divorciada." C.E. Macareñas, Los alimentos entre parientes, Rev. Der. Puertorriqueño, núm. 24, 1967, p. 372.
5. "El marido debe proteger a la mujer y satisfacer sus necesidades en proporción a su condición y medios de fortuna". Código Civil, 1930, 31 L.P.R.A. 282, previo enmienda del 1976.
6. El comentarista francés Planiol señala que la indemnización meramente se contrapone a la privación del derecho de sostenimiento a que tenía derecho la esposa. Se transforma en pensión alimenticia. I Planiol, Treatise on the Civil Law, (sec. 1259), Part I, No. 143,1939, p. 697.
7. Teresita Picó de Silva, Los Alimentos al Ex-cónyuge: Algunas Consideraciones en Torno a una Reforma, supra, pág. 77. Véase también nota al calce núm. 25, respecto al Art. 97 del Código Civil Español.
8. Sylvia Vilanova Hernández, La pensión alimenticia post divorcio: ¿obligación o penalidad?, XVIII-2 Rev. Jur. U. Int. P.R., p. 373 (1984).
9. "Ninguna relación conserva esta obligación del varón divorciado con respecto de la obligación de alimentos entre parientes que regulan los arts. 142 y sigs. C.C. Sin embargo, sí considero que deben interpretarse de manera armónica ambas modalidades, que pueden ofrecer alguna relación... [cjonsidero que esta obligación de entregar alimentos no es precedente de la regulada en los arts. 142 y sigs., sino subsidiaria de aquélla... El art. 105, C.C., que establece como efecto del divorcio la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases. Consecuencia de ello, resulta que el art. 109, sí se considera que impone una obligación preferente para con el cónyuge varón que se divorcia, impide hablar de esa completa ruptura matrimonial y patrimonial... [cjreemos que tal derecho queda siempre condicionado a la imposibilidad de que sus parientes concedan los alimentos." Eduardo Vázquez Bote, Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño, Tomo XI, págs. 254-255, (1993).
10. Véase Olga E. Resumil, La condición jurídica de la mujer puertorriqueña en el siglo XX: ¿continuamos interpretando la parte de la leona?, 54 Rev. C. Abog. P.R. 5 (1993).
11. Las estadísticas de empleo y desempleo del Negociado de Estadísticas del Trabajo reflejaron que para el mes de agosto del presente año, de 1,073,000 personas empleadas en Puerto Rico, 427,000 son mujeres, representando así el 39.8%. Empleo y Desempleo en Puerto Rico, Tabla 3, Agosto 1995, Negociado de Estadísticas del Trabajo, Departamento del Trabajo y Recursos Humanos, Estado Libre Asociado de Puerto Rico.
12. Lo cual recientemente quedó definido en la exposición de motivos de la Ley Núm. 25 de 16 de febrero de 1995, como "...la necesidad de una persona a recibir 'alimentos y habitación'para subsistir con un mínimo de decoro...".
13. Antes de entrar en vigor tal enmienda, el Art. 761 C.c. concedía al divorciado "no culpable" derecho a cuota usufructuaria cuando ninguno contraía nuevas nupcias. La Ley Núm. 25, supra, desterró del Código Civil ese vínculo "post mortem" del matrimonio fracasado. Por el contrario, el Art. 109 C.c. representa, todavía, un vínculo "post" divorcio, "at vita".
14. Debemos ubicar la institución de alimentos en Puerto Rico dentro de la nueva concepción de la sociedad matrimonial a partir de 1976... “[Ejl concepto rehabilitador de los alimentos es una deducción lógica, ya que la sociedad y el ordenamiento jurídico ya no visualiza a la mujer como un ente dependiente y no productivo, sino capaz de convertirse emocional y económicamente en un ser independiente." Teresita Picó de Silva, Los Alimentos al Ex-cónyuge: Algunas Consideraciones en Torno a una Reforma, supra. Véase Katherine Shaw Spaht, "Reahabilitative Alimony, Developments in the Law, 1979-1980, 41 La.L. Rev., pags. 375-377, (1981).
*1078 15. Téngase claro que no hacemos aquí referencia alguna a los alimentos de la prole o al acuerdo voluntario entre ex-cónyuges.
16. "El divorcio lleva consigo la ruptura completa de vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges". Art. 105, Código Civil, 31 L.P.R.A. 381.
"El vínculo del matrimonio se disuelve en los siguientes casos: (1) Por la muerte del marido o de la mujer, (2) Por el divorcio legalmente obtenido, (3) Si el matrimonio se declara nulo". Art. 95, Código Civil, 31 L.P.R.A. 301, énfasis suplido.
17. Véase Millán Rodríguez v. Muñoz, 110 D.P.R. 610, Nota al calce 3, págs. 616-617.
18. Con esta enmienda, nuestro artículo 109 toma un rumbo distinto al del Código Civil de Lousiana, cuyo actual artículo 112 todavía retiene los requisitos de culpa y límite máximo de responsabilidad. Aunque nuestro artículo 109 mantiene el propósito de proveer lo estrictamente necesario para el sustento decoroso, Toppel v. Toppel, 114 D.P.R. 16, 19-20, en esta enmienda se incorpora una serie de parámetros que el actual artículo 97 del Código Civil Español contiene para regular "la pensión por desequilibrio económico" entre ex-cónyuges, inmediato al divorcio. Este último concepto —que nuestro artículo 109 no incorporó — , persigue solventar disloques en la capacidad económica de los divorciados, más allá de lo indispensable para el sustento, pero atendiendo una situación inmediata al divorcio. Es decir, para solucionar una consecuencia económica temporera causada por la desunión. Es posible que el profesor Mascareñas haya sido partícipe de esta tendencia, cuando entendió que del texto del artículo 109 de nuestro Código Civil, vigente en 1967, se desprende que la necesidad económica que atiende "ha de ser actual en el momento del divorcio. Por lo tanto, si la necesidad se produce con posterioridad, evidentemente no procederá la pensión". C.E. Mascareñas, Los alimentos entre parientes, Rev. Der. Puertorriqueño, supra, pág. 372.
19. Las leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro. Art. 18, Código Civil, 31 L.P.R.A. 18.
20. No obstante, el Artículo 7 del Código Civil, 31 L.P.R.A. 7, dispone:

"El tribunal que rehúse fallar a pretexto de silencio, obscuridad, o insuficiencia de la ley, o por cualquier otro motivo, incurrirá en responsabilidad.

Cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos." Art. 7 del Código Civil, 31 L.P.R.A. 7.
21. "Resulta, pues, que la deuda alimenticia tiene el carácter de mancomunada simple, con un tipo especial de proporción: en cantidad proporcionada al caudal respectivo. Y resulta, también, que es divisible entre los obligados. Ahora bien, si uno o algunos de los obligados no tiene recursos para prestar la deuda alimenticia, tendrán que prestarla los otros. Así, en el caso de que sean cinco nietos que estén obligados a dar alimentos a un abuelo, y dos de ellos no tengan la posibilidad económica de darlos, deberán darlos los otros tres." C.E. Mascareñas, Los alimentos entre parientes, Rev. Der. Puertorriqueño, núm. 24, 1967, p. 382-383.